UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

Case No.: 14-17284-AJC

Ruben Barbuscio and                                    Chapter 13
Consuelo Victoria Barbuscio,

Debtors.

_____/

### REPLY TO CREDITOR'S ORDER FINDING THAT CREDITOR MARINSA INTERNATIONAL IS SECURED

**COME NOW** the Debtors, by and through their undersigned counsel and respond to Creditor's Order Finding that Creditor Marinsa International is Secured as follows:

1.      As reflected in the Debtors' memorandum Order Granting Debtors' Motion to Determine Secured Status, Creditor filed a Proof of Claim No.: 21 dated April 14, 2014 which reflects the value of the subject property to be $130,000.00.   This is an admission against interest by the Creditor. The Creditor openly admits the value of the property is $130,000.00 in the Proof of Claim and this Court should find the value of the property to be $130,000.00.

2.      Judge Mark recently decided a case in which a second mortgage was trying to gain priority over the first mortgage. In that case, the complaining creditor in the adversary complained that the debtors entered into a modification agreement with the first mortgage wherein the principal balance was higher than the initial mortgage amount.   Judge Mark found in favor of the first mortgage.   The adversary case was adversary Case No.: 12-01779 RAM.

3.      None of the cases cited by the Creditor reflect the reservation in the first mortgage of the ability to modify the mortgage, nor do any of the cases discuss the affect of Florida Statute § 97.04.

4.      None of the cases cited by Creditor are directly on point. They are all easily distinguishable from the instant case. Therefore, all of the holdings in the cases cited are inapplicable to the instant case.

5.      The case of East Boston Sav. Bank v. Ogan, 701 N.E. 2d 331, 428 Mass. 327 (Mass. 1998), concerned a property that was sold and the intervening mortgage was not discovered at the closing.

6.      In the Aurora Loan Servs. LLC, v. Senchuk, 36 So.3d 716 (Fla., 1st DCA, 2010) case additional funds were given to the borrowers.   In the instant case no additional funds were given to the Debtors.   The modification balance consisted solely of the amount due to the first mortgage.

7.      The Sackadorf v. JLM Group Ltd. Partnership, 462 S.E.2d 64, 250 Va. 321 (Va., 1995) case concerned a lender who was the former owner of the property.   The courts, such as in Katz and Gluskin cited herein, remarked on the special situation of another owner how needs a second mortgage. The instant case concerns a hard money lender.

8.      The Shane v. Winter Federal Sav. and Loan Ass'n.,   492 N.E. 2d 92, 397 Mass. 479 (Mass. 1986) concerned a case where the interest rate was increased from 9.75% to 11%. In the instant case, the interest rate was reduced.

9.      The Lennar Northeast Partners v. Buice, 57 Cal. Rptr. 2d 435, 49 Cal.App.4th 1576 (Cal. App. 3rd Dist. 1996 ) case concerned a case wherein additional funds to the debtor were provided and the interest rate was increased from 9% to 12%. The Lennar court citing to Gluskin v. Atlantic Savings & Loan Assn., 32 Cal. App. 3d 307, 108 Cal. Rptr. 318 (1973) stated, "when the junior lien holder is a subordinating seller, equity may require a different result.   As the Gluskin court noted, a subordinating seller is in a particularly vulnerable position." The Lennar court noted with regard to the Gluskin court, "the effect of these modifications as

the seller alleged, was to allow the construction lender "to escape its obligation. . .

"" Id. at page 442.

10.     In the Shultis v. Woodstock Land Development Assoc., 594 N.Y.S.2d, 890, 893

(A.D., 3rd Dep't 1993) case the interest rate was effectively raised from 9% to

16%.   In Shultis the court held, " this, combined with the modification was made,

not as part of a calculated scheme to foreclose G&G of its rights as was the case in

Remodeling & Constr. Corp. v. Melker (supra) but rather as a last ditch attempt by

Plaintiffs to save the loan in the face of continuing default by Woodstock and to

avoid foreclosure, acts which actually benefitted G & G by continuing its cash flow

and preserving its lien, we do not believe that this is an appropriate case in which

to effect a wholesale subordination of Plaintiff's lien to G&G's lien." Id.

11.     The Burney & Snadon v. McLaughlin, 63 S.W.3d 223 (Mo. Ct. App. S.D., 2001)

case concerned a case where the interest rate was increased from 7% to 10%.

This case other than the increase in the interest rate would have been decided

differently based on the Florida statute 694.07.   The Burney court noted, "It is our

view, however, and the view of both parties to this appeal, that cases in which a

junior mortgage lien is elevated above paramount mortgage are the exception and

not the rule." Id. at page 5.

12.     The Burney court citing the Guleserian court quoted, "The holder of the junior

encumbrance is regarded as necessarily taking the risk of postponement

(frequently an advantage to a second mortgage) of the date of the payment of the

whole or part of the senior mortgage debt." Guleserian v. Fields, 218 N.E.2d 397,

401-02 (Mass. 1966).   "The rule has been referred to as the 'universal rule'". Id.

at 402.   Id. at page 6.   The Florida Statute § 694.07 also did not come into play in

this case.   The instant case is however affected by Florida Statute § 694.07.

13. Footnote 4 of the <u>Burney</u> case quoted the Restatement (Third) of the law of Property, Mortgages, section 7.3(c) (1977) sets out, in part, that:   If the mortgagors and mortgagee reserve the right in a mortgage to modify the mortgage or the obligation it secures, the mortgage as modified retains priority even if the modification is materially prejudicial to the holders of junior interests in the real estate, except as provided in subsection (d). In the instant case, the mortgage did provide for a modification.

14. In <u>Lennar</u> an additional advance was made to the borrower.   Florida statute 694.07 would have affected the outcome in the <u>Lennar</u> case, also.

15. "While a dispute over the effect of an uncontested to modification often raises a question of fact, where reasonable minds cannot differ, the question may be resolved as one of law. (Katz v. Chevron Corp. (1994) 22 Cal.App.4th 1352, 1368, fn. 12, 27 Cal. Rptr.2d 681. I'd at page 441.   In the instant case both parties acknowledge the value of the property is $130,000.00. The <u>Lennar</u> court also citing to <u>Katz</u> stated, "Recognizing the vulnerable position of the subordinating seller, it held that public policy required protection of subordinating sellers." <u>Id</u>.

16. The <u>Lennar</u> court, citing to the <u>Gluskin</u> court stated, "the court found the seller had not consented to the modification and its drastic terms "clearly enhanced the likelihood of a default by [buyer] and the consequent foreclosure." (Id. at p. 317, 108 Cal. Rptr. 318.) <u>Id</u>. at page 441.

**WHEREFORE**, for the above reasons the Debtors' pray this Honorable Court enter an Order Granting the Debtors' Motion to Value and Determine Secured Status, finding the value of the subject property to be 130,000.00 and determining that Marinsa remains in the subordinate position.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed this 1st day

of  August , 2014 to **Nancy K. Neidich**, Chapter 13 Trustee, via NEF, **The Law Office**

**of Matthew E. Ladd,** 4649 Ponce De Leon Blvd., Suite 301, Coral Gables, FL 33146, **Marinsa**

**Miami Pension Fund, The Law Office of Matthew E. Ladd,** 4649 Ponce De Leon Blvd., Suite

301, Coral Gables, FL 33146, and **Debtor** via first class mail.

Freire & Gonzalez, P.A.
Attorneys for Debtor(s)
[ ] Edward Freire, Esq. FBN: 0813771
[X] Laila S. Gonzalez, Esq. FBN: 0975291
[ ] Gianny Blanco, Esq., FBN: 0078080
10647 N. Kendall Dr.
Miami,   FL 33176
Ph. (305) 826-1774
Fax (305) 826-1794